UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MICHALE A. CALLAHAN, | ) | |
| | ) | |
| Plaintiff, | ) | 03-2167 |
| | ) | |
| v. | ) | |
| | ) | |
| CHARLES E. BRUEGGEMANN, | ) | |
| DIANE CARPER, and STEVEN | ) | |
| M. FERMON, | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

On October 12, 2005, this court denied motions by defendants Steven M. Fermon ("Fermon") and Diane Carper ("Carper") for judgment as a matter of law [#101, #106] and for a new trial [#103, #104]. The court granted motions by Fermon and Carper to alter or amend judgment [#103, #104]. The court ordered a remittitur of $176,700 on the punitive damage award against Fermon, to $100,000. The court also ordered a remittitur of $145,600 on the punitive damage award against Carper, to $50,000. The court stated that if Callahan failed to accept the remittitur within twenty-one (21) days, a new trial as to punitive damages would be held. The new trial was scheduled to begin on November 14, 2005, with a final pretrial conference scheduled for November 9, 2005.[1]

On October 26, 2005, Fermon filed a renewed motion for new trial, or alternatively, to alter or amend judgment and for an additional remittitur of the damages awards [#131]. Also on that date, Carper filed a renewed motion for new trial [#133] and a motion for new trial based on newly discovered evidence [#134]. On October 28, 2005, the defendants filed a joint motion to continue the trial date [#136].

I.

The defendants argue in their renewed motions for a new trial or to alter or amend judgment that the issues involving punitive damages are inextricably interwoven with a determination of liability; therefore, if Callahan fails to accept the remittitur, a new trial on liability and damages is warranted. This aspect of the motions is moot because Callahan has

---

[1] On November 3, 2005, Callahan filed a notice of acceptance of the remittitur [#140], superceding his previously-filed notice of intent to accept the remittitur [#139]. The final pretrial and jury trial dates were vacated.

accepted the remittitur. The acceptance of the remittitur also renders moot the motion to continue the trial date [#136].

The defendants also argue that the court should order a remittitur on the entire award of punitive damages because Callahan lacked evidence of recklessness, callous indifference, or evil motive or intent. The court disagrees with this contention. The jury heard ample evidence from which to conclude that Callahan was transferred because he spoke out on matters of public concern, and that Carper and Fermon were motivated by evil intent.

The renewed motions for a new trial or to alter or amend judgment raise issues, and rehash arguments, rejected in the parties' first round of post-trial motions. The issues were unavailing the first time around; the court again finds them unavailing. The court also denies the motions to the extent they seek a full remittitur of all punitive and compensatory damages. Fermon's renewed motion for a new trial or, alternatively, to alter or amend judgment and for an additional remittitur of the damages award [#131] is denied in its entirety. Carper's renewed motion for a new trial [#133] is also denied in its entirety.

II.

Carper has filed a motion for new trial based on newly discovered evidence [#134]. The newly discovered evidence, a printout of an email message to Captain John Strohl, adds nothing to the evidence presented at trial.[2] It is in no way contrary to the testimony of Strohl and Callahan.

At trial, Strohl testified that sometime around mid-May 2000, he and Callahan went to Springfield to present evidence to Illinois State Police officials that Robert Morgan was involved in the Rhoads murders. They left the meeting with the belief that Callahan was to move forward on the Rhoads homicides. Strohl could not recall any restrictions on how Callahan could

---

[2] On November 8, 2005, almost two weeks after she filed her motion for a new trial, Carper filed two affidavits to support her motion for new trial based on newly discovered evidence. Carper offers her own affidavit, stating that the newly discovered evidence confirms her assistance and support of Callahan's investigation. Carper explains that she discovered, in July 2005, that her secretary retained calendars and appointment books documenting meetings and other activities, but she does not state how those materials would have affected the outcome of the trial. The only specific evidence provided to the court is the single email message attached to her October 26, 2005 motion. Carper explains in her affidavit that at the time of the trial, she believed that her archived email messages were not retrievable. She states she learned, after trial, that there was a mechanism for retrieving old messages. Carper also filed the affidavit of Doug Phillips, who states that in June 2005, Carper approached him and asked him to access her email archives. After receiving permission from the Illinois State Police, he did so. Neither affiant explains why the Illinois State Police failed to identify and utilize this procedure until well after trial.

investigate the case. A few days later, Callahan and Strohl were asked to meet with Carper at her office in Springfield. At the meeting, Carper told Strohl and Callahan that the Rhoads investigation was "too politically sensitive" and that Callahan could not go there. Strohl described this as a "180. Initially, we were moving forward and were going to do some things, and all of a sudden it was 'put on the brakes and stop.'" Strohl understood this to mean that they were not to touch the Rhoads matter. Carper stated that "it was okay to go ahead and do some background intelligence on Mr. Morgan; and, if we could develop a case on narcotics or something like that, that was fine to proceed that avenue. But we weren't to connect Morgan with the Rhoads' homicide." Strohl further stated, "We were not to open the Rhoads' homicide case. It was okay if we gathered intelligence on Bob Morgan to see if we could develop enough information to open an investigation case for narcotics. Now, if that led back to something with the Rhoads' case, we would cross that bridge when we got there. But the two were separate issues initially. . . . I can recall Mike asking if he could open a case on Morgan and it was, there was not to be any case opened. There was to be no investigative reports filed. It was merely intelligence gathering activities only."

Carper now submits a printout of a June 18, 2000 email message to Strohl. The message states Carper's instructions on the limited involvement allowed on the Morgan and Rhoads matters. She wrote that District 10 could assist the FBI on the organized crime case, which Carper understood to be related to narcotics. District 10 could also assist ATF with its case. Carper further stated, "It is understood that our assistance with these two cases may result in the opportunity to obtain additional information regarding the Rhoad's [sic] murders." Carper told Strohl she would need "weekly updates on these two cases or as significant events occur. Advise me if ISP's role changes in these cases. In addition, if further information is obtained that would warrant moving the Rhoad's [sic] case from review status to opening a new case, notify the Region immediately before a case is opened. This does not preclude you from continuing to obtain information while the matter is being referred to the Region for consideration." This message does not contradict the testimony given by Strohl. It merely corroborates Strohl's – and Callahan's – testimony.

There is nothing in the email message to suggest that a jury would arrive at a different conclusion if presented with a printout of the email message. The email supports Carper's contention that she authorized District 10 to cooperate with federal agency investigations and report back to her, but Callahan did not testify otherwise. The testimony showed, and the jury agreed, that Carper would not allow Callahan to investigate Morgan's involvement in the Rhoads homicides or open a case without authorization.

The motion for a new trial based on newly discovered evidence [#134] is denied.

## CONCLUSION

For the foregoing reasons, Fermon's renewed motion for a new trial or, alternatively, to alter or amend judgment and for an additional remittitur of the damages award [#131] is denied in its entirety. Carper's renewed motion for a new trial [#133] is also denied in its entirety.

Carper's motion for a new trial based on newly discovered evidence [#134] is denied, and the defendants' joint motion to continue the trial date [#136] is denied as moot. Callahan's motions for attorney fees and costs [#108, #137] remain pending. The defendants' response to those motions shall be filed on or before November 17, 2005.

Entered this 9th day of November, 2005.

**s\Harold A. Baker**
_____
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE