E-FILED
Tuesday, 03 January, 2006  09:19:09 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHALE A. CALLAHAN, | ) |
| | ) |
| Plaintiff, | )   03-2167 |
| | ) |
| v. | ) |
| | ) |
| CHARLES E. BRUEGGEMANN, | ) |
| DIANE CARPER and STEVEN M. FERMON, | ) |
| | ) |
| Defendants. | ) |

ORDER

      After a trial in April 2005, the jury returned a verdict in favor of the plaintiff, Michale Callahan ("Callahan"), and against defendants Diane Carper ("Carper") and Steven M. Fermon ("Fermon"). The jury found in favor of defendant Charles E. Brueggemann ("Brueggemann").

      On May 12, 2005, Callahan filed a motion for attorney fees and costs [#108] pursuant to 42 U.S.C. § 1988. He sought an award of $180,891.25 for legal fees and $13,632.08 in costs, totaling $194,523.33. On May 31, 2005, the court granted the parties' agreed motion for extension of time [#111] for Callahan to file a supplemental motion incorporating attorney fees and costs incurred post-trial. On October 31, 2005, Callahan filed the supplemental motion [#137] seeking legal fees of $218,263.75 and costs of $19,339.94, totaling $237,603.29.[1]

      On June 1, 2005, Brueggemann filed a bill of costs [#117], seeking an award of $7,483.98 for deposition and trial transcript fees and the cost of exemplars used at trial. On October 12, 2005, the court denied Brueggemann's bill of costs in its entirety. Brueggemann filed a motion for reconsideration [#130] on October 24, 2005 which was denied on November 2, 2005 [#138].

      There are three motions pending: Callahan's motion for attorney fees and costs [#137], and motions by Carper and Fermon to stay enforcement of the judgment [#153, #156].

ANALYSIS

I.

      In his motion for attorney fees and costs, Callahan seeks an award of legal fees (including paralegal fees) and costs for depositions, trial transcripts, travel, postage, copies, etc. As an

---

[1] The supplemental motion incorporates all fees and costs itemized in the original motion; therefore, the original motion [#108] is stricken as duplicative.

initial matter, the court finds that Callahan was a prevailing party within the meaning of 42 U.S.C. § 1988.

In determining attorney fees, the lodestar, described in *Hensley v. Eckerhart*, 461 U.S. 424 (1983), is a reasonable hourly charge multiplied by the number of hours of work reasonably spent in preparing and trying the case.

A.

First, the court must determine whether the hourly rate charged by Callahan's attorney is reasonable. An award of attorney fees is based on the market rate for the attorney's services. *Missouri v. Jenkins*, 491 U.S. 274, 283 (1989). The court will presume that an attorney's regular billing rate is his market rate. *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 555 (7th Cir. 1999). However, when an attorney handles all his cases on a contingent-fee basis, the court may look to a number of factors, including "the rate charged by lawyers in the community of 'reasonably comparable skill, experience, and reputation.'" *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir. 1996) (*quoting Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). Evidence of "market rate" also includes fees awarded to the attorney in other cases, and the attorney's credentials. *People Who Care*, 90 F.3d at 1310-12.

Callahan's attorney, John Baker ("Baker") seeks $185 per hour for his services from August 2003 to January 1, 2005, and $200 per hour thereafter. To support his hourly rate, he submits the affidavit of Mary Lea Leahy, an experienced and highly respected attorney with whom this court is familiar. She opines that the hourly rate sought by Baker is "most reasonable." The court is also persuaded by the recent opinion issued in *Titan Int'l v. Becker*, 00-3257 (C.D. Ill. Dec. 13, 2005). In *Titan*, the court awarded Baker an hourly rate of $200.00, noting that the opposing party did not "challenge the proffered hourly rates, and the Court finds them to be extremely reasonable." *Titan*, 00-3257 (Dec. 13, 2005, at *5). In this case, the best indication of a reasonable hourly rate is the rate recently awarded to Baker in *Titan*.

The defendants argue that Baker's rate is excessive. They contend that their attorneys contracted with the State of Illinois as Special Assistant Attorneys General at the hourly rate of $200, and that each of their attorneys has more experience than does Baker. The court is not persuaded by these arguments. That defense counsel chose to contract with the State of Illinois at rates undoubtedly lower than the rates they charge to paying clients[2] does not place a ceiling on Baker's hourly rate. Although Baker has less experience than any of the attorneys representing the defendants in this case, this court has awarded higher hourly rates to attorneys with experience similar to Baker's. *See, e.g., Smith v. City of Urbana*, 01-2209 (C.D. Ill. Mar. 30, 2004) (awarding to attorneys with similar experience an hourly rate of $190 and $220 for

---

[2] Nowhere in their memoranda in opposition to the motion do the defense attorneys state their regular hourly rate for paying clients.

their work in a Section 1983 case).[3]

In this case, the best indication of a reasonable hourly rate is the rate recently awarded to Baker in *Titan*. Therefore, the award of attorney fees will be based on Baker's hourly rate of $185 before January 1, 2005, and $200 after that date.

B.

Next, the court must determine the reasonableness of the time spent preparing and trying the case. The defendants argue for a reduction in the number of hours billed by Baker. They contend the hours claimed are unreasonable because (1) the billing entries lack the requisite specificity for a full award; (2) the petition seeks fees and costs incurred after the remittitur order, and (3) the petition fails to take into account that Callahan did not prevail against Brueggemann.

First, the defendants argue that Baker's billing itemization lacks the specificity required for a full award. They argue that it is impossible to determine exactly how Baker spent his time because much of his time is "block billed." The phrase "block billing" refers to the practice of "enter[ing] the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Robinson v. City of Edmond*, 160 F.3d 1275, 1285 n.9 (10th Cir. 1998). For example, the defendants take issue with Baker's April 7, 2005 billing of $2,200.00 (11 hours at $200.00), documented as "Telephone conferences with client; preparation for trial; Westlaw research; draft order." The defendants argue that this explanation does not indicate how much time was spent on each task, making it impossible for the court to determine whether the amount spent on each task was necessary or reasonable.

The court disagrees with the defendants. Over a two-year span, Baker billed a total of 1,252.5 hours, including paralegal time. Baker deposed numerous individuals, filed a 134-page memorandum opposing the second motion for summary judgment, and spent two weeks in trial. In contrast, counsel for defendants Fermon and Carper entered their appearance on April 1, 2005. By the end of May 2005, Fermon's two attorneys had billed over $369,000 in fees and costs, and Carper's counsel had billed in excess of $169,000, all at hourly rates no higher than Baker's. Though Baker's billing detail is not extensive, it is sufficient. The billing records -- combined with the court's knowledge of the complexity of the case, the lengthy trial, and the fees charged by defense counsel -- lead the court to conclude that Baker's billable hours were reasonable and necessary, if not downright modest.

Next, the defendants argue that Callahan is not entitled to an award for fees and costs incurred after this court entered the remittitur but before Callahan agreed to the remittitur. In support of this argument, the defendants state that during that time, Callahan was holding out for a settlement much higher than the remittitur. They argue that a settlement demand substantially

---

[3] Those attorneys had a supporting role in the litigation and billed relatively few hours in the case. The lead attorneys were awarded between $270 and $295 and, at the time, had just a few years more experience than Baker now possesses.

3

in excess of the remitted amount is itself unreasonable, making the related fees and costs unreasonable. The defendants cite no authority for this argument, nor do they offer specific facts in its support – thereby leaving open the possibility that the defendants contributed to protracted negotiations by offering an unreasonable settlement.

Finally, the defendants argue that the court should use its discretion to reduce Callahan's fees to account for the unsuccessful claim against Brueggemann. This the court declines to do. "A plaintiff should not be compensated for work performed on unsuccessful claims *that are not legally or factually related* to the claim on which the plaintiff prevailed." *Estate of Borst v. O'Brien*, 979 F.2d 511, 516 (7th Cir. 1992) (*citing Hensley*, 461 U.S. at 436) (emphasis added). As this court noted in its November 2, 2005 order, the conduct of the three defendants was so inextricably intertwined that the Illinois Attorney General's office represented all three until two weeks before trial was to begin. Absent a showing that some of the claimed fees and costs were in pursuit of an independent and unsuccessful theory against Brueggemann, a reduction in the award of attorney fees and costs is unwarranted.

II.

Carper and Fermon have filed motions for a stay of execution of judgment pending appeal pursuant to Federal Rule of Civil Procedure 62(d). Rule 62(d) provides for a stay when the appellant gives a supersedeas bond. Fed. R. Civ. P. 62(d). Alternatively, the appellant may petition the court to waive the bond requirement. *Dillon v. City of Chicago*, 866 F.2d 902, 904 (7th Cir. 1988).

> When determining whether to waive the posting of bond, the district court may look to several criteria enumerated by this court: (1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment, *see Lightfoot v. Walker*, 797 F.2d 505, 506 (7th Cir. 1986) (noting that the "procedure for collecting a judgment against the State [of Illinois] is not only cumbersome and time consuming, but uncertain in outcome, since the judgment cannot be paid unless and until the State legislature votes to appropriate the money necessary to pay it"); (4) whether "the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money," *Olympia Equipment v. Western Union Telegraph Co.*, 786 F.2d 794, 796 (7th Cir. 1986); *see also Northern Indiana Public Service v. Carbon County Coal*, 799 F.2d 265, 281 (7th Cir. 1986) ; and (5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position, *Olympia Equipment*, 786 F.2d at 796.

*Dillon*, 866 F.2d at 904-05.

That the State of Illinois will pay the judgment for compensatory damages is hardly reassuring to the court, as it is tantamount to an illusory promise: "I will if I want to." The

cumbersome procedure to collect a judgment requires a plaintiff to jump through multiple hoops. The amount of time involved is likely to be lengthy, and the collection process complex. It is beyond the scope of the defendants' authority to assure the court that the judgment can, and will, be paid promptly after a ruling on appeal in Callahan's favor.

The defendants offer even less assurance for payment of the punitive damages award. "The philosophy underlying Rule 62(d) is that a plaintiff who has won in the trial court should not be put to the expense of defending his judgment on appeal unless the defendant takes reasonable steps to assure that the judgment will be paid if it is affirmed." *Lightfoot*, 797 F.2d at 506-07. Fermon and Carper advance a single argument to support their argument for a stay – posting a bond would create an unnecessary hardship for them. In the alternative, the defendants argue for a temporary stay to allow them to attempt to provide alternate security. The defendants provide no detail as to the likelihood that alternate security, if sought, could be provided, nor do they show why posting the bond would create an *unnecessary* hardship. Rule 62(d) is meant to protect the prevailing party, not the appellant. Hardship for appellant and appellee is inherent in the appeals process.

## CONCLUSION

For the foregoing reasons, Callahan's original motion for attorney fees and costs [108] is stricken as duplicative. His supplemental motion for attorney fees and costs [137] is granted in full. Callahan is awarded the sum of $237,603.29 in attorney fees and costs. Carper and Fermon's motions to stay enforcement of the judgment [153], [156] are denied.

The clerk is directed to enter a supplementary judgment in accordance with this order.

Entered this 3rd day of January, 2006.

**s\Harold A. Baker**
_____
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE